IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERMAINE NIXON, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF MYCOL FRENCH, AND AS NEXT FRIEND OF T.J., A.F., Z.F., Z.F., and M.F., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10 C 1382 |
| LAKE COUNTY METROPOLITAN ENFORCEMENT GROUP AGENTS CHARLES SMITH, BERNARD FAPSO #9504, JEREMY GAUGHAN #9813, JEFFREY PADILLA #4451, PATRICK GARA #9516, THE VILLAGE OF ANTIOCH, THE CITY OF NORTH CHICAGO, THE LAKE COUNTY METROPOLITAN ENFORCEMENT GROUP, THE SHERIFF OF LAKE COUNTY, and LAKE COUNTY, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On February 28, 2011, plaintiff Germaine Nixon ("Nixon"), as independent administrator of the estate of Mycol French, decedent, and as next friend of minors T.J., A.F., Z.F., Z.F., and M.F., filed an eight-count Second Amended Complaint against defendants Lake County Metropolitan Enforcement Group ("LCMEG"), LCMEG Agents Charles Smith, Bernard Fapso, Jeremy Gaughan,[1] Jeffrey Padilla, and Patrick Gara, the Village of Antioch, the City of North Chicago, the Sheriff of Lake County, and Lake County. (Dkt. No. 29 ("2d. Am. Compl.").) Pending before the court is LCMEG's "Motion to Dismiss the Plaintiff's Second Amended Complaint," which the parties have fully briefed. (Dkt. No. 49.) For the reasons set forth below,

---

[1.] On June 2, 2011, plaintiff voluntarily dismissed defendant Jeremy Gaughan from this lawsuit. (Dkt. No. 79.)

LCMEG's motion to dismiss is denied. Defendant LCMEG's answer is due August 2, 2011.

## BACKGROUND

The following background facts are set forth as alleged in Nixon's Second Amended Complaint. (Dkt. No. 29.)

On February 1, 2010, Mycol French ("French") was sitting in his white SUV waiting for his friend to return from shopping when several of the individual defendants approached the vehicle with their guns drawn. (2d. Am. Compl. ¶¶ 13-15.) Without probable cause, the individual defendants shot into the vehicle several times piercing French's chest. (*Id.* ¶ 16.) French then drove out of the parking lot, lost control of the vehicle after driving several blocks, and slammed into the side of a building. (*Id.* ¶ 17.) The defendant officers thereafter impeded the investigation into the shooting, and prevented paramedics and medical staff from providing emergency medical treatment immediately after the incident and prior to French's death. (*Id.* ¶¶ 13, 24.)

Nixon claims that the defendant officers used excessive force in their altercation with French in violation of French's Fourth Amendment right to freedom from unreasonable searches and seizures and 42 U.S.C. § 1983 (Count I), causing French's wrongful death under Illinois state law (Count II), and establishing a claim for relief under the Illinois Survival Act (Count III). Nixon also claims that LCMEG, as "the employer of some or all of the individual defendants," is liable for "reimbursement" of the judgment (Counts VI).

## LEGAL STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's claim must only "raise a right to relief above the speculative level" such that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). If the allegations of a

complaint "fail[ ] to state a claim upon which relief can be granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing the sufficiency of a complaint, the court accepts the well-pleaded allegations as true and draws all inferences in the light most favorable to the plaintiff. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010).

ANALYSIS

LCMEG sets forth a number of arguments in support of its contention that it is either an entity that is not amenable to suit or, in the alternative, that it is a state entity entitled to Eleventh Amendment immunity. (Dkt. No. 50 ("LCMEG's Mem.").) Because Nixon has not clearly set forth the legal basis for her "reimbursement" claim, LCMEG argues its position regarding the Second Amended Complaint under both federal and state law. First, LCMEG argues that it cannot be sued as a "person" under 42 U.S.C. § 1983 because it is not a local government entity or municipality. (*Id.* at 5-6.) Next, LCMEG argues that it cannot be sued under Illinois law because it is not a separate legal entity, and lawsuits against nonexistent legal entities under Illinois law are void ab initio. (*Id.* at 7-11.) Finally, LCMEG maintains that if it is a separate legal entity, it is a state entity and is afforded the privileges of Eleventh Amendment immunity from suit. (*Id*. at 11-13.) The court begins its analysis by addressing LCMEG's legal existence under Illinois law.

1.      LCMEG as a Separate Legal Entity

Federal Rule of Civil Procedure 17(b) governs a defendant's capacity to sue or be sued. If the defendant is not an individual or a corporation, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ P. 17(b)(3). Under Illinois law, "[a] party to litigation must have a legal existence, either natural of artificial, to sue or be sued." *Jackson v. Vill. of Rosemont*, 536 N.E.2d 720, 723 (Ill. App. Ct. 1st Dist. 1988). As a general

matter, "departments within a governing unit lack the requisite separate legal existence" to be sued. *Jackson v. Cook Cnty. Sheriff Police Dep't*, No. 04 C 2344, 2004 WL 2632927, at *2 (N.D. Ill. Nov. 17, 2004) (Filip, J.); *see also Williams v. Fairman,* No. 94 C 206, 1996 WL 164289, at* 1 (N.D. Ill. Apr. 2, 1996) (Coar, J.). On the other hand, if pursuant to statute the defendant operates under its own control and authority, it will be considered a separate suable entity. *See DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 977 n.2 (7th Cir. 2000).

In this case, LCMEG argues that it "is not a separate entity which can be sued because its powers are co-extensive with the State of Illinois." (LMEG's Mem. 11 (citing *Richardson v. Cnty. of Cook*, 621 N.E.2d 114 (Ill. App. Ct. 1st Dist. 1993), and *Mayes v. Elrod*, 470 F. Supp. 1188 (N.D. Ill. 1979) (Marshall, J.)).) In support of this argument, LCMEG relies on various provisions set forth in the Intergovernmental Drug Laws Enforcement Act, 30 ILCS 715/1, et seq., concluding that "the Illinois Department of State Police's authority over LCMEG (or all MEGs, for that matter) is quite broad," and LCMEG should be dismissed because it acts on behalf of the State of Illinois. (*Id.* at 10.)

In *Mayes*, the court held that the Cook County Board of Commissioners was not a separate legal entity capable of being sued because "[t]he Board's governmental authority is coextensive with that of the County, since it is authorized to exercise all the corporate powers of the County." *Mayes*, 470 F. Supp. at 1192; *see also Richardson*, 621 N.E.2d at 117 ("[t]he powers of the county . . . shall be exercised by a county board") (quoting 55 ILCS 5/5-1004). Here, by contrast, while the Illinois Department of State Police may have certain responsibilities with respect to LCMEG, it cannot be said that LCMEG is authorized to exercise all the powers of the State of Illinois. Thus, *Mayes* and *Richardson* are distinguishable on this point.

Moreover, LCMEG has not argued that it was created within a separate governing body,

and the court finds that such an argument would be futile. Pursuant to statue, Metropolitan Enforcement Groups ("MEGs") are defined as "a combination of units of local government established under [the Intergovernmental Drug Laws Enforcement Act] to enforce the drug laws of [the State of Illinois]." 30 ILCS 715/2.02. MEGs are "established . . . pursuant to intergovernmental contracts written and executed in conformity with the Intergovernmental Cooperation Act." 30 ILCS 715/3(1). While MEGs are required to "[c]ooperate with the Department of State Police" to receive state funding, 30 ILCS 715/3(5), this statutory language suggests that MEGs are not, in fact, subject to the Illinois Department of State Police's control. *Cf. Williams*, 1996 WL 164289, at *2 (finding that Cermak Health Service is not a separate legal entity because the Chief of Health Services "is 'under the direction and control of the President [of the Cook County Board of Commissioners] and subject to policy as set by the County Board'") (quoting *County of Cook, Ill., Ordinance 91-0-52*, Sec. 3); *Mayes*, 470 F. Supp. at 1192 (finding that the Cook County Department of Corrections is not a separate legal entity because "[t]he Department is 'created within the office of the Sheriff,' its powers and duties are exercised 'under the direction of the Sheriff,' and its executive director 'shall serve at the pleasure of the Sheriff'") (quoting Ill. Rev. Stat., ch. 125, §§ 202-203, 212).

LCMEG points to several cases to illustrate examples of entities that did not have a separate legal existence, including *Richardson*, 621 N.E.2d at 116-17 (finding that the Cook County Board of Commissioners and Oak Forest Hospital are not separate legal entities from Cook County), *Jackson*, 536 N.E.2d at 723 (finding that the Rosemont Horizon Stadium building was not a separate legal entity), and *Tyler v. J.C. Penny Co.*, 496 N.E.2d 323 (Ill. App. Ct. 4th Dist. 1986) (finding that the Market Place Shopping Center was not a separate legal entity).

These cases are clearly distinguishable. LCMEG is not a hospital, a stadium, or a shopping center; rather, LCMEG is a creature of the Illinois legislature required by statute to be composed of "2 or more units of local government." 30 ILCS 715/3(1). It is also required by statute to maintain an "MEG Policy Board composed of an elected official . . . and the chief law enforcement officers from each participating unit of local government." 30 ILCS 715/3(2). LCMEG must also designate a financial officer to receive the funds that are given to LCMEG by the state and its local government units. 30 ILCS 715/3(3) and (6). While LCMEG has certain reporting requirements, 30 ILCS 715/3(2) and 715(5), and must "[c]ooperate with the Department of State Police," whose role is to "coordinate the operations of all MEG units," 30 ILCS 715/3(5) and 715/5, LCMEG's general level of autonomy persuades the court that LCMEG is a separate legal entity that is amenable to suit under the Federal Rules of Civil Procedure 17.

Finally, the court notes that numerous courts in this circuit have permitted lawsuits to proceed against defendant MEGs since at least 1987. *See e.g.*, *Maltby v. Winston*, 36 F.3d 548, 560 n.14 (7th Cir. 1994); *Cervantes v. Metro. Enforcement Grp.*, No. 01 C 4433, 2001 WL 1329295, at *1 (N.D. Ill. Nov. 1, 2001) (Zagel, J.); *Omar v. Ne. Metro. Enforcement Grp.*, No. 91 C 5751, No. 91 C 5752, 1995 WL 715879, at *1 (N.D. Ill. Dec. 1, 1995) (Duff, J.); *Collins v. Ne. Metro. Enforcement Grp.,* No. 89 C 3077, 1991 WL 93495, at *2 (N.D. Ill. May 20, 1991) (Guzman, J.); *Neal v. Harvey Police Dept., a Div. of the City of Harvey*, No. 88 C 0874, 1988 WL 77067, at *1 (N.D. Ill. July 22, 1988) (Hart, J.); *Ciaglia v. Gomilla*, No. 87 C 343, 1987 WL 17132, at *2 (N.D. Ill. Sept. 17, 1987) (Williams, J.). LCMEG has made no attempt to distinguish these cases.

2. LCMEG as a State Entity

LCMEG further argues that even if it does have a separate legal existence, it nevertheless cannot be sued because it is a state entity or an arm of the state entitled to Eleventh Amendment immunity. (LCMEG's Mem. 11.) LCMEG relies heavily on an unpublished decision in *Tucker v. Fulton Cnty., Ill.*, No. 08-1164 (C.D. Ill. June 8, 2010 Order) (Mihm, J.) (, to show that LCMEG is a state entity. (*Id.* at 12-13.) The court does not agree that as a matter of law LCMEG is necessarily a state entity for purposes of the Eleventh Amendment.

LCMEG first argues that it must be a state entity, entitled to Eleventh Amendment immunity, because its agents are covered by the State Employee Indemnification Act, 5ILCS 350/1, et seq. (LCMEG's Mem. 12-13; *see also* Dkt. No. 65 ("LCMEG's Reply") at 4.) This argument has been accepted by at least one court in the Seventh Circuit, *see Tucker*, June 8, 2010 Order at 7-10 (Mihm, J.); but has been rejected by other courts, *see Cervantes*, 2001 WL 1329295, at *1 (Zagel, J.); *Dykema v. Skoumal*, No. 98 C 5309, 2000 WL 949582, at *1-2 (N.D. Ill. July 7, 2000) (Holderman, J.); *Collins*, 1991 WL 93495, at *3 (Guzman, J.).

The State Employee Indemnification Act generally provides that the State will indemnify "any State employee" in civil actions brought against the employee for "act[s] or omission[s] occurring within the scope of the employee's State employment," and that the Attorney General will appear on the employee's behalf. 5 ILCS 350/2(a) and (e)(ii). Section 1(b) states, in relevant part, "For the purpose of this Act . . . [t]he term 'employee' . . . includes an individual appointed as an inspector by the Director of State Police when performing duties within the scope of the activities of a Metropolitan Enforcement Group." 5 ILCS 250/1(b).

This court agrees with the holdings of *Cervantes*, *Dykema*, and *Collins* that "the Act's designation of state employees is not conclusive for Eleventh Amendment purposes."

*Cervantes*, 2001 WL 1329295, at *1 (citing *Nichol v. Stass*, 735 N.E.2d 582 (Ill. 2000)). On its face, "the statute merely provides that the state will indemnify an officer in the event an action is brought against him for actions taken within the scope of [the task force] arrangement." *Dykema*, 2000 WL 949582, at *2. This court acknowledges the court's conclusion in *Tucker*, that, "[g]iven the particular facts of this case, the Court finds that the [West Central Illinois Task Force] is a state entity and is therefore immune from suit by virtue of the Eleventh Amendment." *Tucker*, June 8, 2010 Order at 10. What was central to the T*ucker* court's analysis, however, was the specific Interagency Agreement creating the task force. *Id.* at 7-10. The court found that the agreement specifically designated personnel on the task force as state employees, provided that the state would indemnify and represent them under the State Employee Indemnification Act, and gave the state the ability to provide nearly everything for the task force: facilities, equipment, training, issuance of credentials, and reporting and case preparation procedures. *Id.* at 9-10. In *Dykema*, by contrast, the relevant agreement "specifically provid[ed] that contributed personnel shall continue to be employees of their local units, and that '[e]ach participating unit of local government shall retain its individual liability for the acts or omissions of personnel assigned to it by MANS.'" *Dykema*, 2000 WL 949582, at *2. This court does not have before it the specifics of the intergovernmental agreement creating LCMEG. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint"). *Tucker* is therefore of limited persuasive value at this stage in the litigation.

LCMEG also argues that it should be considered a state entity, because "the Illinois Department of State Police is responsible for coordinating the operations of LCMEG and establishing rules and regulations and conducting investigations the Director [of] the Illinois

Department of State Police deems necessary to carry out its duties under the *Intergovernmental Drug Laws Enforcement Act*, including the establishment of forms for reporting by each MEG to the Illinois Department of State Police." (LCMEG's Mem. 12-13 (citing 30 ILCS 715/5).) Again, this argument has been accepted by some courts, *see Cervantes*, 2001 WL 1329295, at *2 (Zagel, J.), but rejected by others, *see Collins*, 1991 WL 93495, at *2-3 (Guzman, J.); *Neal*, 1988 WL 77067, at *1(Hart, J.). In *Neal*, the court determined that because MEG units are composed of "two or more units of local government established and operated pursuant to intergovernmental contracts written and executed in conformity with the Intergovernmental Cooperation Act," serving only a limited region, MEGs are local entities. *Neal*, 1988 WL 77067, at*1. The *Collins* court also emphasized that the Intergovernmental Drug Laws Enforcement Act permits MEGs to be created only from "units of local government," concluding "[n]otwithstanding that the 'Department of State Police shall coordinate the operations of all MEG units' . . . [the Northeastern Metropolitan Enforcement Group] is a combination of units of local government - not an arm of the state." *Collins*, 1991 WL 93495, at *2. On the other hand, the *Cervantes* court was persuaded that, pursuant to statute and administrative regulations, the Illinois Department of State Police had more than just "limited state oversight" over MEG functions. *Cervantes*, 2001 WL 1329295, at *2. Viewing the statutory provisions of the Intergovernmental Drug Laws Enforcement Act in conjunction with the State Employee Indemnification Act, the court in *Cervantes* found "these provisions strongly suggest that MEG agents participating in a drug raid act on behalf of the State of Illinois." *Id.*

As discussed in Section 1 above, this court is of the opinion that MEGs maintain a sufficient level of autonomy from the State of Illinois to be considered separate legal entities. As "a combination of units of local government" required to maintain an "MEG Policy Board

9

composed of an elected official . . . and the chief law enforcement officers from each participating unit of local government," 30 ILCS 715/2.02; 30 ILCS 715/3, MEGs are primarily local in nature. Pursuant to the Intergovernmental Drug Laws Enforcement Act, the Department of State Police's duties are to "*monitor* the operations of all MEG units and determine their eligibility to receive State grants," 30 ILCS 715/4 (emphasis added), and to report annually on the MEG's "operations," 30 ILCS 715/6. The Department of State Police is also given the mandate to "coordinate the operations of all MEG units," and may "establish such reasonable rules and regulations and conduct those investigations the Director deems necessary to carry out its duties under this Act." 30 ILCS 715/5. This language does not suggest to the court that the Department of State Police controls the intimate operations of MEGs to the extent that MEGs should be considered an arm of the State.

In *Maltby*, the Seventh Circuit noted that the Central Illinois Task Force was considered a "Local public entity" for purposes of the Local Governmental and Governmental Employees Tort Immunity Act. *Maltby*, 36 F.3d at 560 n.14 ("'Local public entity' includes 'any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act.'") (citing 745 ILCS 10/1-202). The *Maltby* court concluded, "[t]his leads us to believe that the legislature of Illinois believed that the Task Force could be sued, and that it therefore provided these task forces with the same protection it afforded other local governmental bodies." *Id.* Although not directly addressing the Eleventh Amendment issue now pending before this court, the court nevertheless finds this language to be persuasive in its analysis.

As the court noted in *Cervantes,* 2001 WL 1329295, at *1 (citing *DeGenova*, 209 F.3d at 975), "whether an officer is a state or a local employee is not an 'all or nothing' determination."

Just because the State of Illinois, through the Illinois Department of State Police, maintains some involvement with the operations of MEGs and contributes funding to their operations does not make all MEGs state entities or arms of the state for purposes of the Eleventh Amendment. As the United States Supreme Court stated in *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391 (1979), "the Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" *Lake County Estates*, 440 U.S. at 401. Based on the analysis above, the court finds that LCMEG is not, as a matter of law, a state entity or an arm of the state for Eleventh Amendment purposes.

3. <u>LCMEG as a "Person" Under § 1983</u>

Finally, LCMEG also maintains that, as an MEG, LCMEG is not a person subject to liability under 42 U.S.C. § 1983. (LCMEG's Mem. at 5-6.) At the same time, however, LCMEG admits that "a local government unit or municipality can be sued as a 'person' under § 1983." (*Id.* at 6 (citing *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690 (1978).)

It is not at all clear that Nixon's "reimbursement" claim against LCMEG has been brought pursuant to § 1983, and Nixon's response does not clarify this point. Regardless, based on the analysis above and the authority set forth in *Maltby*, as well as the cases cited by Nixon, the court finds that LCMEG generally can be held liable under *Monell*. *See also Eversole v. Steele*, 59 F.3d 710 (7th Cir. 1995) (applying *Monell* analysis to a defendant drug task force).

CONCLUSION

For the reasons set forth above, defendant Lake County Metropolitan Enforcement Group's "Motion to Dismiss the Plaintiff's Second Amended Complaint" (Dkt. No. 49) is denied. LCMEG's answer is due on or before 8/2/2011. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before 8/9/2011. Status hearing set for 8/11/2011 at 9:00 a.m. for purposes of scheduling further dates. The parties are encouraged to discuss settlement.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 26, 2011